## HARRISON G. WILSON *vs.* CITY OF LYNN.

Essex.    Nov. 5. — 30, 1875.    COLT & MORTON, JJ., absent.

Under the St. of 1871, *c.* 218, authorizing the city of Lynn, for the purpose of supplying the city with pure water, to take, hold and convey into the city the waters of Breed's Pond and all water rights connected therewith, and to take and hold, by purchase or otherwise, such land on or around the margin of said pond, not exceeding five rods in width, as may be necessary for the preservation and purity of said waters ; and requiring the mayor to file in the registry of deeds "a description thereof sufficiently accurate for identification," and the city to pay the damages caused by such taking ; the city took certain land, and filed in the registry of deeds a certificate, which described the land as "a lot commencing at the southwest corner of land owned by Charles H. Trask on Walnut Street," and running by four courses and distances, 1896 feet in all, by the northerly line of that street: thence by four successive courses and distances, each except the last terminating at a cedar post, amounting in all to 1703 feet, "to a point on the Downing road (westerly line) at its intersection with Elm Street;" thence by three courses and distances on "westerly line of road," 2496 feet in all ; thence by nineteen courses and distances, each except the last terminating at a cedar post, and amounting

to 8985 feet in all, "to starting point." The names of the owners of the land taken were not mentioned, nor the town or city in which the land was situated, and no plan was referred to in the description or filed with it. At the trial of an action of trespass, brought by the owner of land so taken, against the city, no monuments were proved except along about two thirds of one side of the tract of land intended to be taken; it appeared that a very small portion of it was within the city of Lynn; a plan was introduced, subject to the plaintiff's objection, of the entire tract of land taken, and a surveyor testified that the lot could be traced and its limits made certain by the plan; but there was no evidence that the land could be identified by the description filed without the aid of the plan or of a surveyor; and it did not appear that all of the cedar posts, called for by the description, or which, or how many of them, had been set up. *Held*, that the certificate was insufficient, and that the defendant was a trespasser.

GRAY, C. J. This is an action of tort in the nature of trespass for breaking and entering the plaintiff's close, digging up and subverting the soil, carrying away large quantities of earth and gravel and inundating thirty acres of land.

The defendant justifies its acts as having been done for the purpose of supplying the city and its inhabitants with pure water, under the St. of 1871, *c.* 218.

·The first section of that statute authorized the city for that purpose " to take, hold and convey into and through said city the waters of Breed's Pond, so called, in said city, and the waters which flow into and from the same, and any water rights connected therewith, and the streams running into Beaver Brook below Breed's Pond; " and to " take and hold, by purchase or otherwise, such land on and around the margin of said pond, not exceeding five rods in width, as may be necessary for the preservation and purity of said waters."

By section 2, " the mayor of said city of Lynn shall, within sixty days after taking any of the land aforesaid, file in the registry of deeds for the county of Essex, southern district, a description thereof sufficiently accurate for identification."

By section 4, " said city shall be liable to pay all damages sustained by any person or corporation, by taking of any land, water, water rights or property, or by the constructing of any aqueduct, reservoir or other works for the purposes aforesaid; and if any person or corporation, sustaining damages as aforesaid, cannot agree with the city upon the amount of such damages, he or it may have them assessed in the same manner as is provided by law with respect to land taken for highways."

It is admitted that no previous notice was given to the plaintiff or other landowner of any intention to take their lands, and no hearing was had upon the subject; and that no bounds or monuments were set up to distinguish the lots of the respective proprietors.

The certificate filed by the city in the registry of deeds,* de-

---

\* " City of Lynn. In Common Council, October 8th, 1873.

" Ordered, that the following described lot of land, viz. : a lot of land commencing at the southwest corner of land owned by Charles ʻH. Trask on Walnut Street and running upon a course N. 79° 15′ W. (magnetic) for a distance of 252 feet; thence upon a course N. 69° 30′ W. (magnetic) for a distance of 538 feet; thence upon a course N. 55° 22′ W. (magnetic) for a distance of 804 ft.; thence upon a course N. 56° W. (magnetic) for a distance of 302 ft.; (the above representing the northerly line of Walnut Street;) thence upon a course N. 34° E. (magnetic) for a distance of 150 ft., to a cedar post; thence upon a course N. 56° W. (magnetic) for a distance of 464 ft., to cedar post; thence upon a course N. 46° 50′ W. (magnetic) for a distance of 767 ft., to cedar post; thence upon a course S. 70° W. (magnetic) for a distance of 322 ft., to a point on the Downing road (westerly line) at its intersection with Elm Street; thence upon a course N. 33° 45′ W. (magnetic) being the westerly line of road for a distance of 988 ft.; thence upon a course N. 41° W. (magnetic) being the westerly line of road for a distance of 943 ft.; thence upon a course N. 16° 52′ W. (magnetic) being the westerly line of road for a distance of 565 ft.; thence upon a course S. 64° 10′ E. (magnetic) for a distance of 216 ft., to cedar post; thence upon a course N. 25° 50′ E. (magnetic) for a distance of ·953 ft., to cedar post; thence upon a course N. 66° 50′ E. (magnetic) for a distance of 228 ft., to cedar post; thence upon a course S. 23° 10′ E. (magnetic) for a distance of 300 ft., to cedar post; thence upon a course N. 66° 50′ E. (magnetic) for a distance of 345 ft., to cedar post; thence upon a course S. 23° 10′ E. (magnetic) for a distance of 422 ft., to cedar post; thence upon a course N. 77° 30′ W. (magnetic) for a distance of 436 ft., to cedar post; thence upon a course S. 25° 40′ W. (magnetic) for a distance of 800 ft., to cedar post; thence upon a course S. 60° E. (magnetic) for a distance of 150 ft., to cedar post; thence upon a course S. 30° W. (magnetic) for a distance of 106 ft., to cedar post; thence upon a course S. 48° 40′ E. (magnetic) for a distance of 498 ft., to cedar post; thence upon a course N. 76° 15′ E. (magnetic) for a distance of 289 ft., to cedar post; thence upon a course S. 60° E. (magnetic) for a distance of 254 ft., to cedar post; thence upon a course S. 43° 10′ E. (magnetic) for a distance of 900 ft., to cedar post; thence upon a course S. 28° 30′ E. (magnetic) for a distance of 600 ft., to cedar post; thence upon a course S. 58° 30′ E. (magnetic) for a distance of 1110 ft., to cedar post ; thence upon a course S. 6° 30′ E. (magnetic) for a distance of 500 ft., to cedar post; thence upon a course S. 56° 20′ E. (magnetic) for a distance of 528 ft., to cedar post ; thence upon a course S. 16° 10′ E. (magnetic) for a distance of

scribes the land taken as "a lot commencing at tue southwest corner of land owned by Charles H. Trask on Walnut Street," and running by four courses and distances, 1896 feet in all, by the northerly line of that street; thence by four successive courses and distances, each except the last terminating at a cedar post, amounting in all to 1703 feet, "to a point on the Downing road (westerly line) at its intersection with Elm Street;" thence by three courses and distances on "westerly line of road," 2496 feet in all; thence by nineteen courses and distances, each except the last terminating at a cedar post, and amounting to 8985 feet in all, "to starting point."

The plan introduced by the defendant at the trial, which is not referred to in the description and does not appear to have been filed with it, and to the admission of which in evidence the plaintiff for that reason objected, shows a tract of land, marked by corresponding courses and distances, of irregular shape, more than a mile long, and of width varying from a mere point or angle at each end to something less than a quarter of a mile at the widest part, containing about one hundred acres, and including Birch Brook, which is not named in the statute, but is a tributary of Beaver Brook, running into it below Breed's Pond, and which, as the report finds, substantially dries up in summer time.

The surveyor who made the plan testified to its general correctness, and that the lot could be traced and its limits made certain by that plan. But there was no evidence that the land could be identified by the description filed, without the aid of the plan or of a surveyor; and it did not appear that all of the cedar posts called for by the description, or which or how many of them, had been set up.

---

350 ft., to starting point, — be and the same is hereby taken by the city of Lynn, for the purposes named, and in accordance with the provisions contained in the 218th chapter of the acts of the General Court of Massachusetts, for the year 1871, entitled "An act to supply the city of Lynn with pure water," and the mayor is hereby instructed to record said description of the land so taken in the manner required in section 2d of said act.

"Adopted and sent up for concurrence. S. Henry Kent, Clerk.

"In Board of Aldermen, October 14, 1873. Adopted in concurrence Benj. H. Jones, City Clerk."

Even if the corner of Charles H. Trask's land, assumed as the starting point of the description filed by the city, is a monument capable of being identified; and if the subsequent boundaries on "westerly line of road" can be referred to the Downing road rather than to Elm Street which that road intersects; no monuments whatever are proved, except along about two thirds of one side of the tract of land intended to be taken, and no means are afforded of ascertaining the remaining boundaries except by courses and distances. No names of owners of the land taken are mentioned; nor even the town or city in which the land intended to be taken is situated; and it was admitted at the argument that but a small portion of the tract, near the starting point, is in the city of Lynn, and the rest in the town of Saugus.

The case differs from that of the location of a highway or railroad, in which the width of the land taken throughout the whole length of the way is stated and the terminus at each end clearly defined; and is wholly unlike the case of a deed made by the landowner himself, or the levy of an execution, of which he has distinct notice.

If the plan had been referred to as part of the description, it might have been sufficient. *Stone v. Cambridge*, 6 Cush. 270. *Hazen v. Boston & Maine Railroad*, 2 Gray, 574. *Andover v. County Commissioners*, 5 Gray, 393. But without such reference, or any other notice to the owner of the land, the description before us cannot be held to be " sufficiently accurate for identification," as the statute requires.

The case, in our opinion, imperatively calls for the application of the rule stated by this court in *Glover v. Boston*, 14 Gray, 282, 288 : " The appropriation of private property to the public use, which is one of the highest acts of sovereign power, should not be accomplished by ambiguous or uncertain language. The presumption is in favor of the owner of the land, and any act done by public authority, which interferes with his rights, should be, as it always may be, clear and intelligible." See also *Hinckley v. Hastings*, 2 Pick. 162; *Jeffries v. Swampscott*, 105 Mass. 535 *Pinkerton v. Boston & Albany Railroad*, 109 Mass. 527, 538 *Housatonic Railroad v. Lee & Hudson Railroad*, 118 Mass. 391 *Lewiston v. County Commissioners*, 30 Maine, 19.

The defendant, never having filed the certificate required by statute, was a trespasser, and for this reason, without considering the other objections made by the plaintiff to the validity of the defendant's proceedings, the case, according to the terms of the report, is to                                                   *Stand for trial.*

*S. B. Ives, Jr. & S. Lincoln, Jr.,* for the defendant, were first called upon.

*J. C. Perkins & J. W. Perry,* for the plaintiff, were stopped by the court.