LEXINGTON PRINT WORKS *vs.* INHABITANTS OF CANTON & others.

Norfolk.    December 9, 1896. — January 8, 1897.

Present : FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Taking of Water by Town — Description of Taking in Recorded Instrument — Validity of Taking.*

A town was authorized to take the waters of a certain brook for the use of its inhabitants by a statute, which also provided that the town might by vote declare the quantity of water it proposed to take daily, and such quantity should be held to be the limit of the town's right to take such waters.  The town voted to take the waters of the brook, and declared the quantity which it proposed to take daily, and instructed its water commissioners to take such action as was necessary.   The commissioners filed in the registry of deeds an instrument which recited a taking by the town of " the waters " in question.  *Held,* upon a bill in equity by an owner of water rights on the brook to restrain an interference therewith, that the taking was void.

BILL IN EQUITY, filed May 26, 1896, against the inhabitants of Canton and its board of water commissioners, to have the acts of the defendants in taking or claiming to take the waters of Beaver Brook and its tributaries, and of York Pond and its tributaries, in the towns of Canton and Stoughton, and in filing an instrument descriptive of such taking, declared to be void, and to enjoin the defendants from further diverting the waters above named.   The defendants demurred to the bill for want of equity. Hearing before *Allen, J.,* who sustained the demurrers, and dismissed the bill ; and the plaintiff appealed to the full court.   The facts appear in the opinion.

*B. N. Johnson,* ( *W. N. Buffum* with him,) for the plaintiff.

*T. E. Grover,* ( *F. Joy* with him,) for the defendants.

KNOWLTON, J.    This is a bill brought to enjoin the defendants from an alleged unlawful interference with the plaintiff's water power, used in running its mills and factories.    The case comes before us on the plaintiff's appeal from a decree sustaining the defendants' demurrer and dismissing the bill.    Under the authority of St. 1885, c. 95, and St. 1886, c. 168, the town of Canton could take all the waters of Beaver Brook, on which the plaintiff's mills were situated, and the waters of several other sources of supply, for the use of the inhabitants of the town. The town duly accepted these acts of the Legislature, and afterwards, on August 10, 1887, elected a board of water commissioners.    It then had full power and authority to take the whole or any part of the waters of Beaver Brook, in accordance with the provisions of the statutes.    On October 12, 1894, the water commissioners filed in the registry of deeds for the county of Norfolk, a paper of which the parts material to this case are as follows:

" Commonwealth of Massachusetts.    Norfolk, ss.

" Whereas, by virtue of chapter 95 of the Acts of said Commonwealth passed in the year 1885, being ' An Act to supply the town of Canton with water,' and of chapter 168 of the Acts of said Commonwealth passed in the year 1888, being ' An Act in addition to an act to supply the town of Canton with water,' the said town of Canton is authorized to take, by purchase or otherwise, and hold the waters of York Pond and its tributaries, and of Beaver Brook and its tributaries, in the towns of Canton and Stoughton in said county, and the water rights connected with said water sources. . . . And whereas, said acts were duly accepted by a two thirds vote of the voters of said town present and voting thereon, at a legal meeting called for the purpose within three years from the passage of the first of the aforesaid acts, to wit, on the twenty-seventh day of July, A. D. 1887 ; and whereas by force of the provisions of said acts, and of the votes of said town duly passed at a legal meeting held for that purpose under the authority of said acts, the water commissioners were vested with all authority granted to the said town of Canton by said acts, and not otherwise specially provided for ; and whereas said town has been unable to purchase the land and water herein taken and hereinafter described :

" Now, therefore, know all men by these presents, that the town of Canton aforesaid, by its board of water commissioners, namely, Robert Bird, Michael F. Ward, and Thomas E. Grover, who respectively were elected by ballot by the inhabitants of said town as members of the board aforesaid, by virtue of the power and authority above recited, and all other powers and rights thereto enabling, and in part execution thereof has, within sixty days last past; to wit, on the fourteenth day of August, A. D. 1894, entered upon and taken, and deemed it necessary to take, and does hereby take and hold for the use of said town of Canton, the waters of York Pond and its tributaries, and of Beaver Brook and its tributaries, in the towns of Canton and Stoughton in said county.

" In witness whereof the said town of Canton has caused its name and common seal to be hereto affixed by the board of water commissioners, and we, Robert Bird, Michael F. Ward, and Thomas E. Grover, the board of water commissioners of said town, acting in its behalf, and by the authority of the statutes and of the votes above recited, have hereto severally signed our names, this tenth day of October, A. D. 1894.

" The Inhabitants of the Town of Canton,

By Robert Bird,

Michael F. Ward,

[Corporate Seal.]                      Thomas E. Grover,

Water Commissioners."

The question is whether the town has lawfully taken the whole or any part of the waters of Beaver Brook.

The St. of 1885, c. 95, § 11, provides, " The said town may, at a legal town meeting called for that purpose, by a vote of said town, declare the quantity of water it proposes to take daily, and from what source, and the quantity of water so declared shall be held to be the measure and limit of the right of said town to take or divert the waters of such source, under this act."    At a meeting of the town held on September 14, 1887, it was voted to take the waters of Beaver Hole, Meadow Brook, and York Pond and its tributaries, and of Beaver Brook and its tributaries, and the board of water commissioners were instructed to take such action as was necessary for that purpose. The vote ended with these words : " Provided, and it is intended

by this vote to declare, that the quantity of water so taken shall not exceed half a million of gallons daily." The taking filed in the registry of deeds purported to include all the waters of Beaver Brook. The town originally had a right to take all of these waters. The recitals in the written act of taking implied that the town and the water commissioners still had this right. Looking to this paper alone, no one would doubt that all the waters of the brook had been taken. But the right of the town and of the water commissioners had been limited by a vote of the town declaring the quantity of water it proposed to take daily, and the act of the water commissioners, if interpreted according to its plain language, was unauthorized and illegal.

It is settled by many cases that the recorded act of taking fixes the rights of the parties. It is of the highest importance to one whose real estate is taken, that the record show exactly the measure of the interference with his ownership. In *Glover* v. *Boston*, 14 Gray, 282, 288, is this language: " The appropriation of private property to the public use, which is one of the highest acts of sovereign power, should not be accomplished by the use of ambiguous or uncertain language. The presumption is in favor of the owner of the land, and any act done by public authority which interferes with his rights should be, as it always may be, clear and intelligible." By St. 1885, c. 95, § 3, it is provided that the description of water rights and water sources taken, filed in the registry of deeds, shall be sufficiently accurate for identification. The paper so filed stands in the place of a deed, to show what property has passed from the former owner to the town. Both parties are bound by the description contained in it. *Ham* v. *Salem*, 100 Mass. 350. *Wilson* v. *Lynn*, 119 Mass. 174. *Wamesit Power Co.* v. *Allen*, 120 Mass. 352. *Warren* v. *Spencer Water Co.* 143 Mass. 9. *Kenison* v. *Arlington*, 144 Mass. 456. *Woodbury* v. *Marblehead Water Co.* 145 Mass. 509. *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District*, 165 Mass. 186.

It is contended by the defendants that this act of taking, which is confessedly invalid as a taking of all the property which it purports to take, should be held good as to that part of the water which the town and the water commissioners then had authority to take. This contention, if upheld, would deprive the plaintiff of his right to look solely to the record of taking

for a description of the property taken, and would require him to search the record of votes of the town to see whether it had ever limited its authority by its own act. If such limitation was found, the landowner would be obliged to determine its extent, and apply it to the description contained in the registry of deeds, and take from the property therein described all in excess of that which could lawfully be taken under the limitation. There would be no instrument truly defining the property transferred to the town, and nothing of record to show the state of the title in the place where titles to real estate are expected to be exhibited for the information of all who are interested in them. We are of opinion that the owners of water rights upon the brook are not required to search the records of the town to see whether the terms of the taking are to be changed by a limitation imposed by the town upon its own authority under the statute. The water commissioners having assumed to take that which they were not authorized to take, their taking was void.

*Decree reversed; demurrer overruled.*